IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MELANIE F. DENNEY, | ) | |
| | ) | |
| Plaintiff, | ) | 4:16CV3061 |
| | ) | |
| v. | ) | |
| | ) | |
| THE GUARDIAN LIFE INSURANCE | ) | MEMORANDUM OPINION |
| COMPANY OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the Court on cross-motions for summary judgment (Filing No. 20 and Filing No. 23). On November 7, 2016, Melanie F. Denney ("plaintiff") filed a motion for summary judgment (Filing No. 23). On the same day, The Guardian Life Insurance Company of America ("Guardian") also filed a motion for summary judgment (Filing No. 20). On February 7, 2017, the parties filed a joint motion to vacate the final progression order under the belief that no genuine dispute as to any material fact exists, and this case may be disposed of as a matter of law. *See* Filing No. 35. On the same date, Magistrate Judge Zwart issued an order setting aside case progression deadlines and cancelling trial and pretrial conference settings (Filing No. 36). Upon review of the record and relevant law, the Court finds as follows.

**BACKGROUND**

Beginning in 2007, the Northwest High School, District 82 ("School District") began self-administering a group insurance policy provided by Guardian which included life insurance (Filing No. 21 at 6-7). "[T]he School District generated its own monthly billing statements to Guardian and paid the premiums, submitted enrollment forms to Guardian, and prepared and transmitted censuses to Guardian listing the members of the plan." (*Id*. at 7-8).

On August 1, 2003, plaintiff's husband, Doyle E. Denney ("Decedent"), was hired by the School District as an administrator (Filing No. 1-1 at 1). On August 20, 2003, Decedent requested coverage under a life insurance policy ("Policy") with Guardian as the insurer (Filing No. 22-3 at 6). Decedent elected the maximum amount of insurance valued at $150,000. *Id*. On June 30, 2010, after nearly seven years, Decedent retired from the District (*Id*. at 8). Decedent indicated that he wished to continue his life insurance policy with Guardian following retirement (Filing No. 25 at 5). The School District "mistakenly told Mr. Denney that he was a 'qualified retiree' under the Plan." (Filing No. 21 at 8). After retirement, Decedent continued to pay his insurance premium annually (Filing No. 25 at 5). The 2010/11 census submitted by

-2-

the School District to Guardian listed the Decedent as a retiree with a life insurance amount of $150,000 (Filing No. 22-3 at 12). On August 24, 2015, Decedent died and a claim on the life insurance policy was submitted to Guardian (*Id.* at 8).

By letter dated November 9, 2015, Guardian informed plaintiff that the claimed benefit was not payable (Filing No. 22-5 at 1). Guardian asserted that the claim was denied because Decedent's "coverage terminated June 30, 2010 when he no longer met the definition of a full time employee and did not qualify as a retiree under the terms of this plan." (*Id.* at 2). In order to be covered under the insurance plan, the individual must fall within one of three classifications: (1) administrators; (2) all other eligible employees; or (3) retirees who are at least age 55, with at least 10 years of service (Filing No. 24-1 at 5). Guardian denied the claim because Decedent did not meet the 10-year service requirement and did not "convert his group life insurance policy to an individual life insurance policy." (Filing No. 22-5 at 2).

On March 16, 2016, plaintiff filed a complaint in the District Court of Lancaster County, Nebraska, asserting breach of contract and bad faith (Filing No. 1-1 at 3). On April 15, 2016, Guardian removed the case to this Court pursuant to 28 U.S.C.

§ 1441 (Filing No. 1). On November 7, 2016, both parties moved for summary judgment (Filing No. 20; Filing No. 25).

**STANDARD OF REVIEW**

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). Both parties assert that no genuine dispute as to any material fact exists precluding the case from being disposed of on summary judgment (Filing 35). After review of the record, the Court agrees. Plaintiff's claims hinge on the interpretation and application of an insurance policy to the undisputed circumstances surrounding Decedent's employment, enrollment in life insurance, and retirement. "An insurance policy is a contract and its terms provide the scope of the policy's coverage." *Sweem v. American Fidelity Life Assur. Co.*, 739 N.W.2d 442, 447 (Neb. 2007). "The interpretation of a contract and whether the contract is ambiguous are questions of law." *Timberlake v. Douglas County*, 865 N.W.2d 788, 793 (Neb. 2015). Accordingly, this case will be disposed of as a matter of law.

**DISCUSSION**

Plaintiff brings two causes of action against Guardian: (1) breach of contract and (2) bad faith (Filing No. 1-1 at 3; *see also* Filing No. 8 at 3). The general issue before the Court

-4-

is whether or not Guardian is liable under the terms of the Policy. More specifically, plaintiff argues that the incontestability clauses in the Policy preclude "Guardian from asserting . . . that Denney was never entitled to receive life insurance." (Filing No. 25 at 19).

**I. Breach of Contract Claim**

Under Nebraska law, a court interpreting an insurance policy must first determine if the policy is ambiguous. *Hillabrand v. American Family Mut. Ins. Co.*, 713 N.W.2d 494, 498 (Neb. 2006). When interpreting the meaning of a contract, "[a] court must consider a contract as a whole and, if possible, give effect to every part of the contract." *Brozek v. Brozek*, 874 N.W.2d 17, 28 (Neb. 2016). Provisions of an insurance policy that terminate the policy at the termination of employment are enforceable. *Palmer v. Capitol Life Ins. Co. of Denver Colo.*, 61 N.W.2d 396, 400 (Neb. 1953).

Upon review of the Policy and the terms contained within it, the Court finds that no ambiguity exists and will construe the Policy in accordance with its plain and ordinary meaning. *See Hillabrand*, 713 N.W.2d at 494. Among others, the Policy contains provisions regarding eligibility, termination,

and incontestability.  *See* Filing No. 24-1.[1]  In order to be eligible for life insurance, an employee must be a member of an "eligible class" (*Id*. at 28).  The "eligible classes" are: (1) administrators; (2) all other eligible employees; and (3) retirees who are at least age 55, with at least 10 years of service (*Id*. at 5).

> With regard to termination the Policy provides that:
>
>> An Employee's insurance on behalf of himself under this Policy shall automatically terminate:
>>
>> (1) If his employment terminates.
>> (2) If he ceases to be a member of the classes of employees eligible for the insurance.
>> (3) If this Policy terminates.
>> (4) If this Policy is discontinued with respect to the Employees of his Participating Employer.
>>
>> Termination of Employment shall be deemed to occur when the Employee ceases active service on a full-time basis with his Participating Employer, except to the extent this requirement is modified in the Employee Rider pertaining to each Participating Employer.

(*Id*. at 12).  An employee's coverage ends "the last day of the month in which an employee's active full-time service ends due to

---

[1] This citation refers to the "Plan of Insurance" attached to plaintiff's index of evidence.  The same document can also be found in defendant's index of evidence under Filing 22-2.

disability, retirement (except for qualified retirees), layoff, leave of absence or end of employment." (*Id.* at 29).

The Policy contains three incontestability clauses. The portions of the clauses applicable to the individual insured are as follows. First, "A covered person's insurance under this plan shall be incontestable after two years from his or her effective date, except for violation by the covered person of the conditions, if any, of this plan relative to military or naval service." (*Id.* at 4). Second, "[w]ith respect to the insurance on an Employee and/or his eligible dependents, their insurance shall be incontestable after two years from his effective date, except for violation by the Employee of the conditions, if any, of this Policy relative to military or naval service." (*Id.* at 14). Finally,

> No statement in any application, except a fraudulent statement, made by a person insured under this Policy shall be used in contesting the validity of his insurance or in denying a claim for a loss incurred, or for a disability which starts, after such insurance has been in force for two years during his lifetime.

(*Id.* at 17).

In August 2003, Decedent obtained the life insurance plan while employed as an administrator for the School District.

-7-

At this time he was a member of the "Administrators" class for eligibility.  On June 30, 2010, after nearly seven years, Decedent retired from the School District.  At the time of Decedent's retirement, his employment was terminated, and he ceased to be a member of a class of employees eligible for the insurance.  *See* Filing No. 24-1 at 12.  By application of the terms of the Policy, Decedent's life insurance automatically terminated upon his retirement.

The Court now turns to plaintiff's argument that the incontestability clauses in the Policy preclude Guardian from asserting the termination of Decedent's life insurance as a defense.  Jurisdictions are split with regard to whether an incontestability clause precludes the insurer from asserting a defense on the basis of eligibility.  *See Groll v. Safeco Life Ins. Co.*, 566 A.2d 269, 271 (Pa. Super. Ct. 1989) (describing "two irreconcilable lines of cases" with regard to the application of incontestability clauses to eligibility).  One line of cases, led by *Simpson v. Phoenix Mutual Life Ins. Co.*, 247 N.E.2d 655 (Ct. App. N.Y. 1969), "holds that eligibility is a condition of insurance and cannot be contested."  *Groll*, 566 A.2d at 271.  "The other line of cases, led by *Crawford v. Equitable Life Assurance Society*, 56 Ill.2d 41, 305 N.E.2d 144

(1973), holds that the defense of ineligibility is not barred by an incontestability clause." *Id*.

Plaintiff relies on the *Simpson* line of cases to support her position that Guardian is precluded from asserting eligibility as a defense and denying her claim. *See* Filing No. 25 at 19; Filing No. 31 at 7. Guardian argues that this case is distinguished from both lines of cases discussed in *Groll*, because, unlike the insured parties in the cited cases, Decedent's ineligibility did not exist at the inception of the Policy. *See* Filing No. 30 at 13; Filing No. 34 at 2-3. In addition, Guardian asserts that Neb. Rev. Stat. § 44-1607 supports the position that Guardian is not precluded from asserting the defense that Decedent's coverage was terminated upon his retirement in June 2010 (Filing No. 21 at 10; Filing No. 30 at 8-12; 34 at 6).

The parties have not cited, and the Court has been unable to locate any Nebraska cases dealing with the precise issue before the Court. However, the Fourth Circuit addressed the particular issue dealing with a change in eligibility status after the incontestability term had run in *Corbett v. Fortis Benefits Ins. Co.*, No. 95-1795, 1996 WL 145232 (4th Cir. April 1, 1996). In *Corbett*, the insurer sought to assert the defense that the insured was no longer a member of the covered group at the

time of his death.  1996 WL 145232, at *3.  The insurance policy at issue contained an incontestability clause that the insured asserted precluded the insurer from arguing such a defense.  *Id*. The Fourth Circuit noted that

> [a]n incontestability clause is not a mandate as to coverage, a definition of the hazards to be borne by the insurer.  It means only this, that within the limits of the coverage, the policy shall stand, unaffected by any defense that it was invalid in its inception, or thereafter became invalid by reason of a condition broken.

*Id*. (internal quotation and citation omitted).  The court in *Corbett* further noted that "[a]n incontestability clause does not bar an insurer from invoking specific provisions to argue that the coverage of a previously-covered insured had terminated before the time of the insured's death."  *Id*. (citing *Rasmussen v. Nebraska Nat'l Life Ins. Co.*, 170 N.W.2d 370, 376 (Iowa 1969); 18 Couch on Insurance §72:59 (2d ed. rev. vol. 1983) ("The fact that a policy has become incontestable does not affect the rule that the insurer's liability is measured by the terms and provisions of the policy itself.")).

The Court agrees with the rationale in *Corbett*.  In this case, Guardian does not dispute that Decedent obtained life insurance from Guardian and remained insured from August 1, 2003,

to June 30, 2010 (Filing No. 34 at 2). Guardian's argument does not attack the eligibility or validity of Decedent's insurance policy at its inception, but rather asserts that by the terms of the Policy, Decedent's coverage was automatically terminated on June 30, 2010 (*Id*. at 5). The Court finds the provisions of the Policy with regard to ongoing eligibility are unaffected by the incontestability clauses. Guardian is not precluded from asserting the defense that Decedent's life insurance terminated upon his retirement.

Even if the Court were to find that the incontestability clauses precluded defendant from asserting an eligibility defense, plaintiff's reliance on *Simpson* is misplaced. In 2008, the Nebraska Unicameral added a sentence to the statute dealing with incontestability clauses stating, "[t]his provision shall not preclude the assertion at any time of defenses based upon provisions in the policy that relate to eligibility for coverage." Neb. Rev. Stat. § 44-1607(2). The addition of this sentence clarifies that Nebraska law aligns with the line of cases led by *Crawford*. Where Decedent was no longer covered under the Policy and the incontestability clauses are inapplicable, Guardian is not liable under contract to pay plaintiff's claim.

**II. Bad Faith Claim**

"In order to establish a claim for bad faith, a plaintiff must show an absence of a reasonable basis for denying the benefits of the insurance policy and the insurer's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *LaRette v. American Med. Sec., Inc.*, 705 N.W.2d 41, 47-48 (Neb. 2005). In Nebraska and other jurisdictions, "if a lawful basis for denial [of a claim] exists, the insurer, as a matter of law, cannot be held liable in an action based on the tort of bad faith." *Radecki v. Mutual of Omaha Ins. Co.*, 583 N.W.2d 320, 325-26 (Neb. 1998) (collecting cases). To determine whether or not Guardian may be held liable under the tort of bad faith, the Court must determine if Guardian had an arguable basis for denying plaintiff's claim. *Radecki*, 583 N.W.2d at 326.

As discussed above, Guardian is not precluded from asserting the defense that Decedent was not covered by the Policy notwithstanding the incontestability clauses. Decedent was not a member of an "eligible class" following his June 30, 2010, retirement, and his coverage under the Policy was automatically terminated. Therefore, Guardian had a lawful basis for denying plaintiff's claim; therefore, as a matter of law, Guardian cannot be held liable for plaintiff's bad faith claim.

**CONCLUSION**

For the foregoing reasons, plaintiff's breach of contract and bad faith claims fail as a matter of law. A separate order will be entered in accordance with this memorandum opinion.

DATED this 27th day of March, 2017.

BY THE COURT:

/s/ Lyle E. Strom
_____
LYLE E. STROM, Senior Judge
United States District Court